D. E. WHELAN ET AL V. THE STATE OF TEXAS ET AL

No. A-4921. Decided July 13, 1955.
Rehearing overruled October 19, 1955.
(282 S.W. 2d Series 378)

16 

*John E. Taylor,* of Marshall, *Morton Taylor,* of Sinton, *Dibrell, Gardner, Dotson & Graham* and *Sam J. Dotson,* of San Antonio, *Hart, Brown, Sparks & Erwin* and *James P. Hart,* all of Austin, for petitioners.

The Court of Civil Appeals erred in failing to hold that the trial court erred in refusing to admit any evidence of the deliberate, intentional and systematic omission from the tax rolls, for the years involved, of bank deposits and credits in the amount of over $18,000,000.00 and in personal property of the Cobb estate in an amount of over $2,000,000.00. City of San Antonio v. Stumburg, 70 Texas 366, 7 S.W. 754; Sam Bassett Lbr. Co. v. City of Houston, 145 Texas 492, 198 S.W. 2d 879; Howth v. City of Beaumont, 188 S.W. 2d 350.

*C. M. Turlington,* of Marshall and *Shirley W. Peters,* of Dallas, for respondents.

In reply to petitioners contentions cited Stevens v. City of El Paso, 81 S.W. 2d 149; Missouri, K. & T. Ry. Co. of Texas v. Hassell, 123 S.W. 190; White v. McGill, 144 S.W. 2d 860.

MR. JUSTICE CALVERT delivered the opinion of the Court.

The State of Texas and other taxing units sued D. E. and R. J. Whelan for unpaid and delinquent ad valorem taxes for the years 1950, 1951 and 1952 and for statutory penalties and interest thereon. Judgment of the trial court for the plaintiffs was affirmed by the Court of Civil Appeals. 271 S.W. 2d 108.

We have concluded that the judgments of the courts below must be reversed for reasons to be hereinafter assigned; but petitioners insist, for several reasons, that judgment should be here rendered setting aside the assessments for the years in question without prejudice to the right of taxing authorities to reassess their properties for such years. It is to these matters that we must first give our attention.

Primarily, petitioners' complaint is that in arriving at assessed valuations of property in Harrison County for the years in question taxing authorities unlawfully and arbitrarily discriminated against them. In particular, they contend that whereas, admittedly, their producing oil and gas properties

and other real properties were assessed at a minimum of from 30% to 33 1/3% of reasonable cash market value, other property interests were assessed, arbitrarily, at a much lower percentage of value. The general plan of the Board of Equalization was to assess at 33 1/3% of value.

■ The record discloses rather clearly that all non-producing oil and gas leases in the county were assessed at an arbitrary flat rate of one dollar per acre, wholly irrespective of actual market value, and that cattle were assessed at an arbitrary flat rate of approximately fifteen dollars per head, wholly irrespective of actual market value. This method of assessing non-producing oil and gas leases and cattle was clearly contrary to the injunctions put upon taxing authorities by Article VIII, Section 1 of the Constitution of Texas and the statutes of this state, which require that assessed valuations be arrived at on the basis of reasonable cash market value. State v. Whittenburg, 153 Texas 205, 265 S.W. 2d 569, 572; Rowland v. City of Tyler, Texas Com. App., 5 S.W. 2d 756, 760. But the mere fact that taxing authorities arbitrarily disregard the true and legal basis of arriving at assessed valuations does not, of itself, entitle a litigating taxpayer to relief. To be entitled to relief he must also show that the arbitrary or unlawful plan or scheme of arriving at assessed valuations resulted in substantial injury to him. State v. Whittenburg, supra; Druesdow v. Baker, Texas Com. App., 229 S.W. 493, affirmed Baker v. Druesdow, 263 U.S. 137, 44 S. Ct. 40, 68 L. Ed. 212; City of Arlington v. Cannon, 153 Texas 566, 271 S.W. 2d 414, 417. Exact uniformity and equality of taxation is an unattainable ideal. Rosenburg v. Weekes, 67 Texas 578, 4 S.W. 899, 901; Cooley on Taxation, 4th Ed., Vol. 1, § 259.

■ There is no conclusive proof of substantial injury to petitioners from the arbitrary valuation of non-producing oil and gas leases at one dollar per acre. The record shows there was an average of approximately 200,000 acres in non-producing leases on the tax rolls in each of the years in question. The petitioners themselves rendered 1189.84 acres in non-producing leases which were assessed at one dollar per acre. Testimony indicated that non-producing leases in the county had a market value of from $5.00 to $200.00 per acre. We do not think the testimony is reasonably susceptible to the interpretation that the assessed valuation of one dollar per acre placed on petitioners' non-producing leases represented one-third of their market value but that the assessed valuation of one dollar per acre placed on other non-producing leases was an arbitrary

value arrived at irrespective of market value. There was testimony that *all* non-producing leases were assessed at one dollar per acre irrespective of market value and this would include petitioners' non-producing leases. There is in the record no testimony as to the market value of petitioners' non-producing leasehold interests other than the value shown on the tax rolls. In the absence of evidence and proper findings of the market value of petitioners' non-producing leasehold interests and evidence and proper findings of the market value of all other non-producing leasehold interests, we have no way of knowing and no basis for holding as a matter of law that the arbitrary assessed valuation of one dollar per acre on all property of this type has resulted in substantial injury to the petitioners. It may have operated to their benefit. State v. Whittenburg, supra.

There were 35,000 head of cattle rendered in 1950, 40,000 in 1951, and 50,000 in 1952. They were assessed at from $10.00 to $15.00 per head. Petitioners neither rendered nor owned cattle. The offered opinion testimony that grown cattle had a market value in Harrison County during the period in question of from $40.00 to $1,000 per head. On the other hand, as pointed out by the Court of Civil Appeals, there was testimony that the cattle rendered included "big, little, old, young and scrubs." The burden was on petitioners to show that the arbitrary assessment of all cattle at $15.00 per head, one-third of a market value of $45.00 per head, resulted in substantial injury to them. Obviously it cannot be said that the general opinion testimony tendered by petitioners established as a matter of law that the market value of the cattle rendered was greater or substantially greater than the value placed thereon by the Board of Equalization, or that substantial injury has been established as a matter of law.

■ In addition to the evidence offered to show the arbitrary values placed on non-producing oil and gas leases and cattle, petitioners also offered testimony that their property was assessed at 33 1/3% of a value many times over its market value but this testimony was sharply contradicted. Also they offered testimony to show that, comparatively, their oil and gas producing properties, by virtue of a formula used by the Boards of Equalization, were assessed at a much higher percentage of market value than were similar properties owned by Hollandsworth Oil Company and Stanolind Oil & Gas Company, but this testimony was also contested. On neither basis can we hold as a matter of law that the assessed valuations of petitioners' properties are illegal and void.

The record reflects that the commissioners court of Harrison County employed an expert to assist in arriving at the value of producing oil and gas properties, but there is no conclusive showing that the members of the court, sitting as a board of equalization, abdicated their function and accepted the valuations of the expert without giving petitioners an opportunity to appear and be heard as was done in Simkins v. City of Corsicana, Texas Civ. App., 86 S.W. 2d 792, no writ history. The fact that the board, after hearing, approved the valuations substantially as fixed by the expert would not render them illegal and void. The enlistment of expert assistance in such matters is not to be condemned.

■ In their fourth point of error petitioners complain that the undisputed evidence shows that the 1952 assessed valuation was based on intrinsic rather than reasonable cash market value. Intrinsic value is the basis for arriving at assessed valuation only when there is evidence that the property has no market value. Harlingen Independent School Dist. v. Dunlap, Texas Civ. App., 146 S.W. 2d 235, 237, writ refused; City of Austin v. Cannizzo, 153 Texas 324, 267 S.W. 2d 808, 812; West Texas Hotel Co. v. City of El Paso, Texas Civ. App., 83 S.W. 2d 772, no writ history. By their sixth point petitioners assert that it was error to permit oral evidence that their taxes for 1952 were delinquent. We need not consider these matters further for they may not occur on another trial.

Petitioners' application for writ of error was granted on their fifth point directed at the refusal of the trial court to admit evidence showing the amount of taxable bank deposits omitted from the tax rolls. We have concluded that the exclusion of this evidence was error which requires a reversal of the judgments below.

Petitioners offered evidence tending to show that the omission of bank deposits from the tax rolls was deliberate, arbitrary and systematic, and resulted in this species of property escaping taxation altogether. Neither respondents nor amicus curiae really contend otherwise. What they do contend is that bank deposits are not taxable and that, even if taxable, the failure to tax such deposits would not afford petitioners any basis for relief.

We full well realize the practical difficulties and problems to be encountered in taxing bank deposits, but to hold that they are not taxable would require us to fly in the very face of the

Constitution and the Statutes of this state. This no court is at liberty to do.

Article VIII, Section 1 of the Constitution declares that "Taxation shall be equal and uniform" and that *"all* property * * * *shall be taxed* in proportion to its value." We are not called upon to decide whether the Legislature could define the word "property" as used in the Constitution in such terms as to exempt money or bank deposits from taxation. The Legislature has not undertaken to so define it. On the contrary, it has, by its Acts, defined the word "property" so as to specifically include money and bank deposits and to require their taxation. Article 7145, V.A.C.S. provides that *"all* property, real, personal or mixed, * * * is subject to taxation, and the same shall be rendered and listed as herein prescribed."

Article 7147 provides: "Personal property, for the purposes of taxation, shall be construed to include all goods, chattels and effects, *and all moneys,* credits, bonds and other evidences of debt owned by citizens of this State, whether the same be in or out of the State * * *." By the provisions of Article 7149 the term "money" is defined as follows: "The term 'money' or 'moneys' wherever used in this title shall, besides money or moneys, *include every deposit which any person* owning the same or holding in trust and residing in this State, *is entitled to withdraw in money on demand."* Article 7152 directs that an owner in rendering property "shall list all of his real estate, *moneys,* credits," etc., and that persons rendering property as agents shall list "all * * * *moneys* or other personal property invested, loaned or otherwise *controlled by him* * * * and all *moneys deposited subject to his order, check or drafts* * * *."* Among the forty-three specific items of property the taxpayer is required by Article 7162 to list in rendering his property for taxation is item 35 which reads as follows: *"Money on hand or on deposit,* in or out of the State, *with banks,* trust companies, corporations, firms or individuals, and subject to order, check or draft, including certificates of deposit." In prescribing the criteria of value to be used in assessing various kinds of property Article 7174 provides: *"Money, whether in possession or on deposit,* or in the hands of any member of the family, or any other person whatsoever, shall be entered in the statement at the full value thereof."

■ ■ It could hardly be made plainer that money on deposit in banks is subject to taxation. Money is taxable when it is on deposit in a bank just as it is when it is in a cash register, a per-

sonal safe, or a safe-deposit box. The fact that an ordinary bank deposit creates a relationship of debtor and creditor between the bank and the owner does not alter the fact that for tax purposes, under our statutes the deposit is property and is taxable as such. Campbell v. Wiggins, Tax Collector, 2 Texas Civ. App., 1, 20 S.W. 730, 735, affirmed on certificate of dissent, 85 Texas 424, 21 S.W. 599, application for writ of error denied, 85 Texas 451, 22 S.W. 5; Campbell v. Riviere, Assessor, Texas Civ. App., 22 S.W. 993, writ refused. It would be a strange interpretation of the Constitution and the statutes to say that the money of those who reached the bank on December 31 would be exempt from taxation but that the money of those who failed to reach it would be taxable. When the taxpayer, for any cause, fails to furnish the statement of property required of him by the foregoing statutes, Articles 7193 and 7204, V.A.C.S., make it the duty of the assessor of taxes to ascertain the amount and value thereof and to assess the same for taxes. It is not for taxing authorities to decide what property shall escape taxation; that right lies alone with the people in the writing of their Constitution and with the Legislature in the enactment of laws. Neither may a taxpayer be denied his constitutional right to equal and uniform taxation because the omission to place property on the tax rolls is an omission of the tax assessor rather than of the Board of Equalization.

Of course petitioners cannot escape the payment of taxes because of the deliberate and arbitrary failure to tax bank deposits. "The government does not lose its right to taxes justly owing on one parcel of property, by reason of the failure of its officers, either negligently or designedly, to assess other property that is likewise taxable." City of Wichita Falls v. J. J. & M. Taxman Refining Co., Texas Civ. App., 74 S.W. 2d 524, 530, writ refused; Sam Bassett Lbr. Co. v. City of Houston, 145 Texas 492, 198 S.W. 2d 879. But petitioners do not seek to escape the payment of taxes; they seek only to require a revision of the assessed valuations of their property so that they will be required to pay only the amount that is justly due and owing.

■ In State v. Whittenburg, 153 Texas 205, 265 S.W. 2d 569 and City of Arlington v. Cannon, 153 Texas 566, 271 S.W. 2d 414, we recognized that a taxpayer was entitled to relief when by a deliberate and arbitrary preconceived plan of taxing authorities large amounts of property, owned by others, was omitted from the tax rolls. Once such a plan of taxation is put into effect, the taxpayer must assume the onerous burden of

proving substantial injury, that is, that his taxes, by virtue of the omission, are excessive or substantially higher than they would have been if the omitted property had been on the rolls. City of Arlington v. Cannon, supra. It is thus that he may establish that his taxes are "within themselves excessive" within the rule laid down in Sam Bassett Lbr. Co. v. City of Houston, Texas Civ. App., 194 S.W. 2d 114, 117-118, and approved by this court in the same case. 145 Texas 492, 198 S.W. 2d 879-880. It is only thus that he may secure his constitutional right to be taxed on an equal and uniform basis with others.

■■ Articles 7329 limits the defenses which may be interposed to suits for delinquent taxes. Subdivision 3 of that article reads as follows: "That the taxes sued for are in excess of the limit allowed by law, but this defense shall apply only to such excess." The language of subdivision 3 cannot be construed to mean that a taxpayer may defend against a suit for taxes only when his property is assessed at more than its fair market value or when the rate levied is in excess of that allowed by law. To so hold would require that the statute be held unconstitutional for it would operate to deny to the taxpayer his constitutional right to be taxed on an equal and uniform basis with others. The legislature has no power to sanction discrimination between taxpapers by taking away defenses. Vance v. Town of Pleasanton, Texas Civ. App., 661 S.W. 457, 459, affirmed, Com. App., 277 S.W. 89; Howth v. French Independent School Dist., Texas Civ. App., 115 S.W. 2d 1036, 1038, affirmed, 134 Texas 211, 134 S.W. 2d 1036.

■ Petitioners rendered "cash on hand" in each of the years in question and the amount rendered was assessed at 60% of its value. We cannot assume that the amounts so rendered did not include money on deposit in banks. If it did not that fact may be developed on another trial. The record shows that the total assessed valuation of property on the tax rolls for the years in question was from $31,000,000.00 to $39,000,000.00. Petitioners alleged in their pleading and offered to prove on the trial that there was money on deposit in the banks in Harrison County, having a taxable situs in that county, on January 1st of each of the years, in the amount of approximately $18,-000,000.00, none of which was on the tax rolls. On objection by respondents the court excluded this testimony.

In the light of what we have said, it follows that the testimony was admissible. If the proffered testimony supported the pleadings it would have shown that by placing bank deposits on

the tax rolls approximately $6,000,000.00 would have been added thereto. The total amount of petitioners' taxes levied for state, county and school purposes, exclusive of penalties and interest, was $38,878.68, and the total amount levied for county purposes alone was $13,562.04. Assuming, as we must, that the budgetary needs of the county and school district were met by the tax rate adopted and levied on the assessed valuation, the addition of $6,000,000.00 in assessed valuation should have resulted in a substantial reduction of petitioners' taxes, either through reduced assessed valuation of the property on the tax rolls or through a reduced tax rate. A proportionate reduction of assessed valuation would have resulted in a reduction of petitioners' taxes by one-sixth of their total taxes, or $6,479.00. A proportionate reduction of the tax rate for county purposes alone would have resulted in a reduction of petitioners' taxes by approximately one-sixth of the taxes due the county, or $2,244.00. It can hardly be questioned or doubted that on the record before the court the proffered evidence, if undisputed, would have shown substantial injury as a matter of law in that petitioners' taxes were excessive to the extent indicated. What is here said will not preclude respondents from showing on a retrial, if they can, that petitioners owned money on deposit in banks or other taxable property which was not assessed or that the assessed valuations on petitioners' property were much lower than 33 1/3% of value. If petitioners can show substantial injury on a retrial by reason of the omission of taxable bank deposits from the tax rolls they will be entitled to judgment setting aside the assessment for the years 1950, 1951 and 1952 and to a re-assessment of their properties by taxing authorities on an equal and uniform basis under Article 7346, V.A.C.S., taking into consideration the value of bank deposits on January 1st of the years in question. French Ind. School Dist. v. Howth, 134 Texas 211, 134 S.W. 2d 1036, 1038; Electra Ind. School Dist. v. W. T. Waggoner Estates, 140 Texas 483, 168 S.W. 2d 645, 653; State v. Richardson, 126 Texas 11, 84 S.W. 2d 1076, 1078. This is their only remedy since the tax rate cannot be altered.

■ We also sustain petitioners' seventh point of error which complains of the method followed by the trial court in the submission of special issues.

Special Issue No. 1 inquired of the jury if the Board of Equalization assessed petitioners' property in 1950 "at a substantially higher percent of its true value than was fixed by said Board on the great bulk of the property on the assessment rolls

of Harrison County, Texas, for the year 1950?" Special Issues Nos. 2 and 3 made the same inquiries for the years 1951 and 1952. All three of these issues were answered in the negative. A great many other issues, including all of those submitting petitioners' defenses, were submitted conditionally. They were not to be answered unless the first three issues were answered in the affirmative.

No doubt the first three issues were framed upon the statement of this court in Dallas County v. Dallas National Bank, 142 Texas 439, 179 S.W. 2d 288, 289 that "one whose property has been assessed on substantially the same basis as the great bulk of the property on the same tax roll may not have his assessment cancelled merely because in isolated instances some of the other property on the same tax rolls has been assessed at less than its proportionate value." It is to be noted that the court in that case went on to hold that the taxpayer was entitled to relief if he made a showing of discrimination by comparison of the assessed valuation of his property with the assessed valuation of the property of a reasonable number of other taxpayers similarly situated.

■ On a re-trial special issues calculated to elicit the facts on which petitioners' legal defenses are based should be submitted unconditionally. If one of those defenses, supported by evidence, is that the assessed valuation of petitioners' property is grossly excessive, special issues inquiring as to the reasonable cash market value of petitioners' properties on January 1st of each of the years will furnish a basis for a determination of the law question involved. If an element of their defense of discrimination is that the arbitrary assessment of all non-producing oil and gas leases at one dollar per acre resulted in discrimination against petitioners to their substantial injury and they are able to adduce sufficient evidence to require the submission of issues inquiring as to the market value of their own non-producing oil and gas leases as well as the market value of all other non-producing oil and gas leases, those issues should be submitted. If one element of their defense is that there has been an arbitrary assessment of cattle to petitioners' substantial injury, and evidence requiring the submission of issues thereon is adduced, issues inquiring as to the market value of cattle in Harrison County on January 1st of the years in question should be submitted. If one element of their defense is that through the use of a formula, or otherwise, discrimination has been practiced against petitioners in the valuation of oil producing properties of others and petitioner makes a showing of such

discrimination issues should be submitted inquiring as to the market value of petitioners' properties and as to the market values of other producing properties as to which evidence is adduced. If one element of their defense is that bank deposits have been arbitrarily omitted from the tax rolls, evidence of the amount of such deposits should be admitted, and if the evidence on the amount is conflicting, issues as to the amount of taxable deposits should be submitted. If there are other phases of the defense of discrimination, supported by evidence, they should be submitted.

It will perhaps simplify matters if the issues on value are submitted on a per acre average basis as to real estate and a per head average basis as to cattle.

■ If the answers of the jury show that the assessed valuation of petitioners' properties is grossly excessive, or if the answers to the other issues satisfy the court that petitioners have suffered substantial injury by reason of the other actions of the taxing authorities complained of, the assessments of petitioners' properties for the years 1950, 1951 and 1952 should be cancelled without prejudice to the right of taxing authorities to accept petitioners' taxes on the basis of the valuations at which petitioners rendered their properties or to proceed under the provisions of Article 7346, V.A.C.S. If an issue on excessive valuation of petitioners' properties—as distinguished from an unequal valuation thereof—is submitted, cancellation of the assessments should not follow unless the finding shows the assessed valuations to be grossly excessive, Johnson v. Holland, 17 Texas Civ. App., 210, 43 S.W. 71, writ denied; State v. Houser, 138 Texas 28, 156 S.W. 2d 968, as distinguished from a mere difference in opinion or error in judgment, State v. Houser, supra; Simkins v. City of Corsicana, 86 S.W. 2d 792, no writ history. If other findings show only some measure of insubstantial discrimination, the assessments should not be cancelled.

The judgments of the courts below are reversed and the cause is remanded for re-trial. Costs are assessed against respondents.

Opinion delivered July 13, 1955.

Rehearing overruled October 19, 1955.