**R. T. KIRKPATRICK et al., Appellants,**

**v.**

**W. J. PARKER et al., Appellees.**

**No. 16740.**

Court of Civil Appeals of Texas.

Fort Worth.

July 15, 1966.

Rehearing Denied Sept. 16, 1966.

Strasburger, Price, Kelton, Miller & Martin, and Royal H. Brin, Jr., Dallas, for appellants.

Coleman & Whitten, and Royce Whitten, Denton, for appellees.

OPINION

LANGDON, Justice.

This appeal is from dissolution of temporary restraining order and denial of temporary injunction. Appellants, the plaintiffs instituting this suit, are all taxpayers of the Lewisville Independent School District and owners of property therein, and, including the original plaintiffs and those who later joined in, 22 such taxpayers are appellants. These plaintiffs, having received notice of proposed increases in the valuations of their property for purposes of the 1965 ad valorem tax, brought suit to restrain the Tax Assessor-Collector, the Superintendent of Schools, and the Board of Trustees from proceeding with assessment of their properties for tax purposes upon the proposed basis, which was alleged to be arbitrary, discriminatory and fraudulent, and based upon a plan or scheme omitting entirely complete categories of taxable property, and for mandamus to require defendants to place on the tax rolls of the District for 1965, all of the taxable property owned by persons living in the District.

After hearing, the trial court dissolved the temporary restraining order and denied temporary injunction. From its said order this appeal has been duly perfected.

By three points of error appellants contend that the trial court erred in denying temporary injunction when the record showed (1) uncontrovertedly that many categories of non-exempt property were intentionally omitted from assessment and taxation; (2) that the valuations proposed to be assessed against the properties of appellants were grossly excessive, arbitrary, and discriminatory; and (3) because the record establishes that injunctive relief was timely sought.

We affirm.

In their original petition the plaintiffs alleged that the "Defendants have failed entirely to assess monies, bank accounts, and other types of non-exempt personal property held and owned by residents of the district, in violation of the statutory and constitutional requirements that all taxable property in the district be taxed uniformly and equally according to its real value. They have deliberately adopted a plan for the omission from the tax rolls of such categories of property, there being a large volume thereof in the district, thus causing substantial injury to Plaintiffs by requiring higher taxes upon them than would otherwise be necessary to raise the same total tax revenue if all such taxable property were assessed and taxed, and amounting to a denial of due process and equal protection to Plaintiffs, discrimination, and denial of rights guaranteed by the Constitution of Texas and the United States." The record reflects that suit was filed on October 14, 1965. That 84% of all taxes in the District have been paid and all but 4 of the plaintiffs have paid their 1965 taxes and one of the four made a partial payment on his tax.

The testimony upon the temporary injunction hearing reflected that individually owned bank accounts, stocks and bonds, annuities, household and kitchen furniture in excess of $250.00, notes receivable and jewelry were not taxed in 1965 nor in any previous years and no effort had been made to do so except for business

inventories. Livestock is taxed and some automobiles. An effort is made to tax individually owned boats according to lists furnished by the State. Some are taxed. Others are not. Mail addressed to many is returned and the Tax Assessor-Collector "can't pin them down." He has made every effort to do so. He stated there was money in the bank on January 1, 1965, and that he had obtained a statement from the bank and assessed the money on deposit.

The Tax Assessor-Collector for the District is aware of the fact that all of the items excluded from the tax roll are legally subject to tax. He has never been instructed by the School Board to assess such property or not to assess it. Under the evidence (1) there was no plan or intention in this regard; (2) such a plan had not been discussed; and (3) it was not deliberate. The Board has never complained to or criticized him for not including such items for taxes. The Board of Equalization recognized that there were taxable categories of property excluded but had never suggested it be omitted. If rendered it would be taxed. There was no preconceived plan or scheme to omit any property.

The record reflects that the President and members of the Board of Trustees and the plaintiffs owned personal property in the excluded categories. It further reflected that not a single one of the plaintiffs rendered any property, personal or real, for 1965 taxes. It was therefore rendered and assessed by the Tax Assessor-Collector and the Board of Equalization did not raise such valuations. Not one of the appellants protested any plan of taxation before the School Board or before the Board of Equalization and they offered no testimony, sworn or unsworn, before such Board of Equalization to show their properties were excessively valued.

At the hearing on the temporary injunction only four of the appellants offered any testimony. Only 13 or 14 of the plaintiffs appeared before the Equalization Board although notices were mailed to all of them. The four appellants appearing in court testified that they owned non-exempt personal properties, jewelry, stocks, bonds, money in the bank etc., as of January 1, 1965, yet they did not render it. One of the plaintiffs who testified he had money in the bank was then asked how much he had in the bank on January 1, 1965, and declared the question was too personal. Not one of the plaintiffs had in past years ever rendered items in the excluded categories nor paid any taxes thereon. At least two of the four who testified stated they had never known of any one rendering such personal items for taxes. Plaintiffs were aware of the exclusion in past years but had never previously complained about it. Their complaint was not initiated on this occasion until after they had received notice of a proposed increase in the assessed valuation of their property.

The plaintiffs failed to offer any proof in support of the allegation that there was a "large volume" of property in the District in the excluded categories. They failed to show the identity, location, ownership or value of any such property or that the exclusion of such property caused them substantial injury.

The burden was on the plaintiffs to show that the omission of personal property from the tax roll was harmful to them. In Clark v. Cedar Hill Independent School District, Tex.Civ.App., 295 S.W. 2d 671 (Dallas 1956, ref., n. r. e. ), it is stated: "There is no evidence in the record to show how much personal property escaped taxation, to whom it belonged, or what effect its omission had on any of appellants—that is, whether he had to pay more or less by reason of the omission than he otherwise would have been required to pay. Failing to show individual injury, no one of appellants can escape payment of his taxes because of the omission of personal property from the tax rolls, nor is he entitled to an injunction. Whelan

v. State [155 Tex. 14], 282 S.W.2d 378; City of Arlington v. Cannon, 153 Tex. 566, 271 S.W.2d 414; State v. Whittenburg, 153 Tex. 205, 265 S.W.2d 569; Hutchinson v. City of Dallas, Tex.Civ.App., 290 S.W.2d 253."

The Distict's Board of Trustees had for many years considered a program of re-evaluation for the District and had discussed such a program in open meetings of the Board prior to 1965. One of the plaintiffs was a former member of the Board but neither he nor any of the other plaintiffs availed themselves of the opportunity to appear before the Board and protest the program of re-evaluation.

In May of 1965 the Board employed a firm of appraisers to assist the Tax Assessor-Collector in the program of re-evaluation of all property in the District outside the city limits of Lewisville and thereafter for some time they were actively engaged with their work throughout the District. During this time no protests were made by any of the plaintiffs. The City of Lewisville had previously employed a firm to appraise the property within the city limits and the School District by paying a portion of the expenses for such appraisal received a copy of the appraised values possibly a year ago or within the year. It was brought up to date. When the work of the appraisers employed by the District for the area outside the city was completed the values placed upon the tracts of land were submitted to the Tax Assessor-Collector of the District. These values were considered by him in the light of his own knowledge of the property involved and the records of his office after which he assessed the property. He made about twenty-five changes in the values submitted.

The Board of Equalization had two or more meetings in which they went over the assessed values prior to the time the individual taxpayers were given the opportunity to appear before them. The Board did not increase any of the assessed values. It decreased several in instances where the taxpayer appeared and presented some basis for reduction.

Prior to initiation of the re-evaluation program all of the property in the city and the improvements in the rural areas were assessed on the basis of market value whereas land in the rural areas was not. It was valued at so much per acre regardless of its true market value. By its program of re-evaluation the Board sought to equalize and place values of all property on a more uniform basis for taxation purposes.

All of the plaintiffs were owners of tracts of land in the rural areas used for farm or ranch purposes. The market value of their land was considerably higher than the values placed upon it in previous years for tax purposes.

Unquestionably the Tax Assessor-Collector for the District and the firm of appraisers employed to assist him in the re-evaluation program were well qualified to appraise the properties in question. The members of the Board of Equalization were very familiar with the land involved. Some of them grew up on it. They were so familiar with it that they could tell you the color of a barn on a particular farm. The qualifications of the above firm and individuals responsible for the appraisals and assessments were not challenged.

■ Under the record in this case, the property of the plaintiffs was uniformly and correctly valued and assessed on the basis of its fair market value in line with other comparable properties in the community. The chief complaint of the plaintiffs is that the assessed values are too high for farm and ranch property because the productive capacity of the land will not justify such assessed values. In effect they seek a double standard for fixing tax values rather than a uniform standard based upon fair market value which is arrived at by thorough investigation of all factors upon which such values are based. There

is no evidence to the effect that the valuations are arbitrary, discriminatory or fraudulent as alleged by plaintiffs. The fact that such valuations are higher than in the previous year is not in itself sufficient to support such allegations.

Under the evidence in this record the Board of Trustees for the District did nothing more than attempt to appraise the property of the entire District and to assess it on the basis of its fair market value. It was assessed for taxes at 55% of market value.

"The judgment of a board of equalization on a particular assessment is conclusive unless there is a showing of fraud, or other abuse. Injunctive relief will not be granted where it does not appear that the board has abused its discretion." 51 Tex.Jur.2d 513, § 150. See also 51 Tex.Jur.2d 526, § 161 to the effect that mere conclusions or possibility of injury, unsupported by allegations of specific facts, will not warrant issuance of an injunction.

There is no testimony in this record to indicate that the value of all of the property in the District including the plaintiffs' was not ascertained by the same standard or that the Board arbitrarily adopted a system of valuation that resulted in fixing values on the appellants' property without regard to and in violation of the principle of uniformity and equality required by the Constitution.

"A board of equalization functions in a quasi judicial capacity in fixing valuations. Having large discretionary powers, the decision of the board on a particular assessment, in the absence of fraud or irregularity, is ordinarily conclusive. Since the board, rather than the courts, has the duty of making valuations, it is not within the jurisdiction of the courts to exercise any supervisory care over the valuations made by the board so long as it acts within the scope of the powers conferred on it by law, and in obedience to what may reasonably be considered an honest judgment. The fact that there is a difference of opinion as to the reasonableness of valuations does not warrant judicial interference. Thus, in the absence of any other showing, a landowner may not complain that the board assessed his property at one hundred per cent of its true value. Further, the fact that the board took into consideration the amount of revenue to be raised is not a ground of objection, where it appears that the board was diligent and careful to equalize values on a fair basis. If a taxpayer alleges that the assessed valuation is excessive, the burden is on him to show that the assessment is so flagrantly wrong as to come within the condemnation of the law. In the absence of fraud or discrimination, a slight excess in valuation will not defeat a levy. And where the evidence on this issue is conflicting, the question is one of fact for the jury to determine." 51 Tex.Jur.2d 509, § 148.

A plan of taxation excluding the personalty here involved is not as a matter of law arbitrary, illegal and fundamentally defective and erroneous but involves a question of fact for the court or jury.

The recent case of Kelly v. A. & M. Consolidated Independent School District, Tex.Civ.App., 398 S.W.2d 438 (Waco 1966, ref., n. r. e. ), which was tried to a jury, involved a similar case in which it was undisputed that similar items of personalty were generally omitted from the District tax rolls and apparently no complaint of omission had been made previously. Page 439 of the opinion states, "Where the valuation fixed by the board of equalization is attacked on the ground of unlawful or arbitrary discrimination it is not sufficient to show 'even that other property was omitted from the tax rolls altogether,' it is held, 'except where the omission was the result of a deliberate and arbitrary plan or scheme to permit certain classes of property to escape their fair share of the tax burden.' State v. Whittenburg, 153 Tex. 205, 265 S.W.2d 569, 573 and case cited. In Whelan v. State, 155 Tex. 14, 22, 282 S.W.2d 378, 381, reversal resulted from exclusion of evidence that the omission 'was

deliberate, arbitrary and systematic,' and the court emphasized that the taxpayer was entitled to relief where it was shown that there was a 'deliberate and arbitrary preconceived plan.' In City of Arlington v. Cannon, 153 Tex. 566, 271 S.W.2d 414, 416, the 'deliberate adoption of a plan for the omission from the tax rolls' was the criterion announced."

The trial judge was the judge of the facts proved and of the reasonable inference to be drawn therefrom.

In our opinion the action of the trial court in dissolving the temporary restraining order and in denying application for temporary injunction was proper and the trial court did not abuse its broad discretion in ruling as it did.

All points of error are overruled and the judgment of the trial court is affirmed.