**Bert CARROLL et al., Appellants,**

v.

**Kenneth LEE et al., Appellees.**

**No. 7967.**

Court of Civil Appeals of Texas, Texarkana.

Jan. 27, 1970.

Rehearing Denied Feb. 24, 1970.

W. C. Hancock, Pittsburg, for appellants.

John D. Raffaelli, Raffaelli, Hawkins & Carter, Texarkana, for appellees.

FANNING, Justice.

Plaintiffs brought a class action against Linden-Kildare Consolidated Independent School District, its Trustees, its Tax-Assessor Collector and the members of the Board of Equalization of said school district.

Plaintiff tax paying property owners in the said school district complained of the plan of taxation of the school district contending to the effect that the district was ignoring fair market value as a criterion for placing values and were omitting the various items of taxable personal property, resulting in an unfair tax burden being placed on the real property and contended the district's tax plan was unlawful, fundamentally wrong and illegal. Plaintiffs sought injunctive relief as well as a mandamus to require the defendants to comply with the applicable laws of Texas in placing values upon the taxable property and collecting taxes thereon.

A temporary restraining order was granted and a hearing was set for an application for temporary injunction for August 6, 1969. On August 6, 1969, it was admitted that the tax rolls were not in compliance with law and the trial court granted a temporary injunction and set the cause for hearing on permanent injunction for September 15, 1969. The cause later, on September 11, 1969, was re-set on the merits for September 22, 1969. On September 19, 1969, defendants filed a motion to dissolve the temporary injunction, contending to the effect that its tax plan had been corrected to be in conformity with the law. Plaintiffs filed an answer to the motion to dissolve and also filed their first supplemental petition.

On September 25, 1969, the trial court, after hearing the evidence adduced on defendant's motion to dissolve, entered its order dissolving the temporary injunction. Plaintiffs have appealed from the order dissolving the temporary injunction.

As we understand appellants' main contention, it is generally to the effect that the uncontradicted evidence, as a matter of law, showed that an arbitrary, illegal and fundamentally defective and erroneous scheme and plan had been adopted by the school district, and that by reason thereof,

the assessment of taxes thereunder was void and that the tax roll could not be legally certified. Generally, it is the position of appellants that farm land was arbitrarily assessed at $35.00 per acre and that bank deposits, automobiles, household furnishings and other items of personal property were omitted from the tax rolls. We also understand that appellants also contend that after the school district amended and changed its original illegal plan that thereafter bank deposits, household furniture and other personal property generally escaped taxation, that the tax assessor-collector, the district and the Equalization Board did not use due diligence to see that said personal property did not escape taxation, and that values placed on automobiles, cattle and other personal property were arbitrary and not based on market value. Appellants also contend that the trial court was not authorized to hear additional testimony (under Rule 270, Texas Rules of Civil Procedure) more than 30 days after its judgment was final, and while this case was on appeal but prior to submission and oral argument of the case before this Court.

■ With respect to appellants' contention with reference to trial court's hearing additional testimony more than 30 days after its judgment and while the case was on appeal to this court, we have concluded to not consider such evidence on this appeal. In this connection, see the authorities listed below.[1] Furthermore, we deem it unnecessary to consider this additional evidence which merely buttresses and fortifies the trial court's judgment, in view of the fact, as hereinafter stated, that we think the evidence adduced on the original hearing on the motion to dissolve amply supports the judgment of the trial court.

There was testimony to the effect that prior to the filing of the suit the school district had placed an arbitrary value of $35.00 per acre on all rural real estate in the school district. Apparently the members of the school board did not realize this was an illegal plan until the filing of this lawsuit. After counsel was employed by defendants, efforts were made to put in effect a tax plan that would comply with the laws of Texas. The following written resolutions were adopted by the school board, to-wit:

"DEFENDANTS' EXHIBIT NO. '1'

"It was moved by Mr. Kerlin Harris that the tax assessor of the Linden-Kildare Consolidated Independent School District be directed to make certain that all property, real, personal or mixed, subject to taxation within or by the Linden-Kildare Consolidated Independent School District, excluding that property exempt from taxation by law be rendered, listed and assessed. Further, that the tax collector and those operating within his office be directed to exert every effort to make certain that all such property subject to taxation by the District be included within the rolls of property taxed by the taxpayers or be included on the unrendered rolls. Further, that all property rendered and assessed for taxation whether on the rendered or unrendered roll be assessed and rendered at the same percent of its fair market value. The motion was seconded by Mr. O. L. Holland and upon vote being taken was unanimously adopted.

"I, Dr. Vernon B. Glenn, Secretary of the Board of Trustees of the Linden-Kildare Consolidated Independent School District, hereby certify that the above and foregoing is a true and correct copy of a resolution adopted by the Board of Trustees at a meeting held on the 31 day of July, 1969.

/s/ Vernon B. Glenn, Jr., M. D."

[1]. Rule 270, Tex.R.Civ.P.; 56 Tex.Jur.2d 466; Texas Employers Insurance Company v. Elder, 155 Tex. 27, 282 S.W.2d 371; Republic National Bank of Dallas v. Fredericks, 155 Tex. 79, 283 S.W.2d 39.

"RESOLUTION

"BE IT RESOLVED by the Trustees of the Linden-Kildare Consolidated Independent School District that the Tax Assessor of the Linden-Kildare Consolidated Independent School District is hereby requested to use all necessary diligence to cause all taxable property, real, personal and mixed, within said school district to be rendered and assessed for taxation on the school district tax rolls for the tax year 1969 in accordance with the Constitution and Laws of the State of Texas; that said Tax Assessor call to the attention of each property owner in the school district assessing property for taxation for the tax year 1969 that the law requires that both real and personal property be rendered for taxes; and that said Tax Assessor assess on the school district tax rolls for the tax year 1969 all property, both real and personal, that comes to her attention and which is not rendered for taxes for said year by the owner or person required to render same, as provided by the applicable Revised Civil Statutes of Texas.

"IT IS FURTHER RESOLVED AND ORDERED that this resolution be entered in the minutes of the Trustees of the Linden-Kildare Consolidated Independent School District and that a copy of same be delivered to the Tax Assessor by the Secretary of the Board of Trustees.

"The above resolution being read it was moved and seconded that the same be adopted. Thereupon the question being called for vote, the same was adopted by the unanimous vote of the Board of Trustees.

"I, Dr. Vernon B. Glenn, Secretary of the Board of Trustees of the Linden-Kildare Consolidated Independent School District, hereby certify that the above and foregoing is a true and correct copy of a resolution, as amended, adopted by the Board of Trustees at a meeting held on the 31 day of July, 1969.

/s/ Vernon B. Glenn, Jr., M. D."

Certified copies of said two written resolutions were introduced in evidence in the original hearing on the motion to dissolve.

On said original hearing three witnesses testified. Mr. Lee, President of the School Board, testified, among other matters, to the effect that as far as he knew all property within the district had been assessed at 50% of its market value, and that no property which was subject to taxation had been deliberately omitted from the tax rolls and that as far as he knew the Tax Assessor-Collector had assessed all the property she knew about. Mrs. Jones, the Tax Assessor-Collector, testified, among other things, to the effect that she was present when the Board adopted the two resolutions above referred to, directing her to make certain that all property, real, personal or mixed, subject to taxation in the district be rendered, listed and assessed; that since the resolutions were passed she sent out letters to all the taxpayers within the district asking them to render their personal property; that all automobiles within the district were assessed at 50% of their value; that she attempted to get bank deposits on the tax roll by asking the banks and having a subpoena issued but the banks refused to give her information as to its individual depositors, however some taxpayers rendered bank accounts and that she listed individual bank accounts that she knew of; that as far as she knew there was no property, real or personal that was not on the tax roll; that no taxable property had been deliberately omitted from the tax rolls; that she put all personal property she knew of on the rolls and that if she learns of any personal or real property that is not on the rolls, she will put it on the rolls; that when any one told her about taxable property she put it on the rolls. Mrs. Jones on cross-examination also testified

to the effect that cattle were placed on the rolls at $50.00 per head; we are of the view that this testimony is not harmonious with her other general testimony and also is inconsistent with the testimony of Mr. Penny, a member of the Board of Equalization; said testimony of Mrs. Jones was also not in harmony with the tax policies of the School Board as shown by its written resolutions.

We quote from the testimony of Mr. Penny, a member of the Board of Equalization, in part as follows:

"Q. Now, in your efforts jointly as the Equalization Board, what has been your purpose and your duties? What did you do, Mr. Penny?

A. Well, we tried to equalize values.

Q. Now to equalize values, what was the first thing that you had to do as to the value of property?

A. We had to try to determine the market value on it.

Q. The market value of every piece of property that you put on the rolls?

A. Yes, sir.

Q. Now, what percentage of the fair market value was used by the Equalization Board?

*    *    *    *    *    *

Q. *What per cent did you use, Mr. Penny?*

A. *Fifty (50%) per cent.*

Q. *What that whether it was real estate or personal property or whatever it was?*

A. *Yes.*

*    *    *    *    *    *

Q. As to the personal property, how did you do it?

A. The tax collector sent out the letters, of course, on the personal property, and then if we knew of property, we attempted to get it on the roll.

Q. All right, did you members of the equalization board have any opinion as to what different types of personal property were worth?

A. Have any what?

Q. Opinion. Did you all have an opinion, we will say, as to *what cattle,* livestock, or a tractor were worth?

A. We discussed these things from time to time, yes.

Q. *And what percent did you use in attempting to arrive at the value of the personal property?*

A. *Fifty (50%) per cent.*

*    *    *    *    *    *

Q. *Did you and the equalization board, as a whole, deliberately omit any property from the rolls?*

A. *No, sir.*

Q. *Did you value any property at any per cent of its value other than 50%?*

*    *    *    *    *    *

A. *Fifty (50%) per cent of what we thought.*

Q. *All of it was based on 50% of what you say was the fair market value?*

A. *Yes, sir.*

*    *    *    *    *    *

Q. Did you members of the equalization board give Mrs. Jones information of certain property that to their knowledge was not on the rolls and she put it on the rolls—if you all knew of something?

A. Yes, if we knew of anything, we gave it to her.

Q. And the property of which you knew or which you had information, you gave it to Mrs. Jones and it is on the rolls?

A. Yes, sir." (Emphasis added.)

The granting or refusing of a temporary injunction is a matter that rests within the sound discretion of the trial court, and unless it appears from the record that the court has abused that discretion, the action of the trial court will be upheld. In an appeal from an order either granting or refusing a temporary injunction, as in other types of appeals, the appellate court is required to view all evidence and legitimate presumptions in the light most favorable to the judgment of the trial court's exercise of discretion, and where the evidence is in conflict, an abuse of discretion on the part of the trial court is not shown. See Skinner Corp. v. Calallen Independent School Dist., Tex.Civ.App. 1966, 409 S.W.2d 929, n. w. h.; and the numerous authorities cited therein.

We quote from *Skinner Corp.*, supra (409 S.W.2d 931) in part as follows:

"In an attack upon a tax program because of the omission from the assessment rolls of certain classes of taxable property, the taxpayer must prove not only that a certain category or type of property was omitted from the assessment rolls, but also that such omission was the result of a deliberate, arbitrary and fundamentally erroneous scheme to permit certain classes of property to escape their fair share of the tax burden. State v. Whittenburg, 153 Tex. 205, 265 S.W.2d 569; Kelly v. A. & M. Consolidated Independent School District, Tex.Civ.App., 398 S.W.2d 438, writ ref., n. r. e.; Wilson v. City of Port Lavaca, Texas, Tex.Civ.App., 407 S.W.2d 325.

"As stated in Kelly v. A. & M. Consolidated School District, supra, a case with a very similar fact situation to the instant case:

'In Whelan v. State, 155 Tex. 14, 22, 282 S.W.2d 378, 381, reversal resulted from exclusion of evidence that the omission "was deliberate, arbitrary and systematic," and the court emphasized that the taxpayer was entitled to relief where it was shown that there was a "deliberate and arbitrary preconceived plan." In City of Arlington v. Cannon, 153 Tex. 566, 271 S.W.2d 414, 416, the "deliberate adoption of a plan for the omission from the tax rolls" was the criterion announced.'

"The provisions of the statutory articles contained in Title 122, V.A.T.S., which are relied upon by appellants to show illegality of Cage's method of listing and appraising properties, do not apply to independent school districts unless adopted by the district. Seguin Independent School District v. Blumberg, Tex.Civ.App., 402 S.W.2d 552, writ ref., n. r. e., and authorities there cited. In taxing matters, school districts are governed by the provisions of Title 28. But even if such statutes cited by appellants should apply, the trial court has impliedly found that appellees have substantially complied therewith.

"The evidence supports the trial court's implied findings that no taxable property was omitted from the tax rolls of Calallen Independent School District as the result of any deliberate, arbitrary and discriminatory scheme to permit certain classes of property to escape taxation, and also its implied finding that no such illegal scheme in fact existed. * * *."

In Kelly et al. v. A. & M. Consolidated Ind. Sch. Dist., et al., Tex.Civ.App.1966, 398 S.W.2d 438, wr. ref., n. r. e., in a taxpayers class suit for injunction and mandamus, it was stated by the court in its opinion, in part as follows:

"The evidence is undisputed that the items of personalty concerning which complaint is made were generally omitted from the district tax rolls. Where the valuation fixed by the board of equalization is attacked on the ground of unlawful or arbitrary discrimination it is not sufficient to show 'even that other property was omitted from the tax rolls altogether,' it is held, 'except where the

omission was the result of a deliberate and arbitrary plan or scheme to permit certain classes of property to escape their fair share of the tax burden.' State v. Whittenburg, 153 Tex. 205, 265 S.W.2d 569, 573 and cases cited. In Whelan v. State, 155 Tex. 14, 22, 282 S.W.2d 378, 381, reversal resulted from exclusion of evidence that the omission 'was deliberate, arbitrary and systematic,' and the court emphasized that the taxpayer was entitled to relief where it was shown that there was a 'deliberate and arbitrary preconceived plan.' In City of Arlington v. Cannon, 153 Tex. 566, 271 S.W.2d 414, 416, the 'deliberate adoption of a plan for the omission from the tax rolls' was the criterion announced.

"We are unable to hold that there is no evidence to support the jury finding. Appellants cite authorities holding that the omission is itself 'evidence that an arbitrary scheme had been adopted.' This is not the question presented. The point is that there was no evidence.

"The tax assessor-collector testified the property was not deliberately left off the rolls. No one had suggested it be omitted. There was evidence there had never been any discussion concerning leaving property off the roll. No school board member had requested any personalty not be assessed. The board president and the superintendent testified there was no plan or intention to omit any personalty. Testimony from members of the board of equalization negatived adoption of any plan or scheme to omit any property. We are also unable to hold, from this record, that the evidence is factually insufficient to support the finding, or that it is contrary to the overwhelming preponderance of the evidence.

"The court did not abuse its discretion in refusing to order mandamus. At the time of trial the assessor-collector testified he was in the process of assessing 'all automobiles we can locate' and putting all he could find on the tax roll; that he was going to prepare an unrendered roll on household furnishings and estimate their value on the roll; that some bank deposits, where information was obtained, were being placed on the roll, and the school district was 'going to put on the rolls all the rest of the bank deposits that we can get the bankers of friends and neighbors out there to tell about, if they could be located.' It was shown that 'about four or five hundred' automobiles had been listed on the rolls after the suit was instituted. * * *"

■ It is our view that Mrs. Jones' testimony on cross-examination with reference to the assessment of cattle is not harmonious with her general testimony with reference to following the written policy resolutions adopted by the school board; it is also inconsistent with the testimony of Mr. Penny, above shown; all of which testimony was heard on the motion to dissolve at the original hearing. We think the trial judge, as the trier of the facts, was authorized to resolve the conflicts and inconsistencies in Mrs. Jones' testimony and Mr. Penny's testimony, and the trial court evidently resolved such inconsistencies in support of its judgment dissolving the temporary injunction.

■ After carefully considering all the evidence adduced on the original hearing on the motion to dissolve the temporary injunction (and without considering or resorting to the additional bolstering and fortifying evidence later heard by the trial court more than 30 days after its original judgment) it is our opinion that the evidence heard on the original hearing supports the judgment of the trial court in dissolving the temporary injunction and that no abuse of discretion of the trial court in dissolving the temporary injunction is shown.

The judgment of the trial court is affirmed.