**Dan BLAHA, Appellant,**

**v.**

**D. F. McHENRY et al., Appellees.**

**No. 497.**

Court of Civil Appeals of Texas, Houston (14th Dist.).

May 26, 1971.

Rehearing Denied June 16, 1971.

Allan I. Schneider, Schneider & Boethel, Giddings, Robert E. Perman, Smithville, for appellant.

Robert M. Huey, Jack McCreary, Doren R. Eskew, McCreary & Huey, Austin, for appellee.

BARRON, Chief Justice.

This is an appeal from a judgment of the District Court of Burleson County, Texas in favor of Caldwell Independent School District and its Tax Assessor-Collector, D. F. McHenry. Injunctive relief was sought by plaintiff, Dan Blaha, to enjoin the collection of 1968 taxes on the grounds that the school district's taxing scheme was illegal and arbitrary and not uniform, and that the valuations placed on the property of Blaha were so grossly excessive as to constitute fraud on the taxpayer or taxpayers.

Trial was to the court without a jury. The suit was originally filed on behalf of several plaintiffs, but all parties were dismissed with the exception of Dan Blaha on the ground that the remaining plaintiffs had no standing to bring such class action in such a group. The plaintiff, Dan Blaha, is appellant here.

It is the contention on this appeal by plaintiff that the trial court erred in denying plaintiff the injunctive relief as prayed for. Plaintiff specifically brings forward four points of error which complain that the trial court erred in finding that plaintiff failed to prove substantial injury as a result of defendants' alleged illegal tax plan; the alleged error of the trial court in finding that plaintiff failed to prove gross excessiveness of property valuations as a result of defendants' alleged illegal tax plan; the alleged error of the trial court in finding that the matters in controversy were rendered moot by the voluntary payment of 1968 taxes under protest by plaintiff; and the alleged error

in denying injunctive relief on the ground that plaintiff filed his suit after defendants' tax plan had been put into effect and over seventy-five per cent (75%) of the taxes had been paid and collected by defendants.

There is no statement of facts in the record. The trial court did, however, make findings of fact and conclusions of law at the request of plaintiff which were timely filed and which constitute a part of the record. The "findings of fact," which in their critical phases are not findings of fact in the true sense but a narrative of the testimony adduced, state that plaintiff duly rendered his real property for taxation for the year 1968 and was notified by the Board of Equalization to appear before it because of a proposed general increase in property values. Plaintiff failed to appear, and his property values were increased. Defendants and the Board of Equalization then set values on plaintiff's lands by classifications of acreage rather than by the independent market value of each tract. Plaintiff neither sought nor obtained a temporary restraining order or a temporary injunction to prevent defendants from putting its plan of taxation into effect. Defendants' tax plan was put into operation, and approximately 75% of the taxes assessed for the year 1968 had been paid and collected prior to the filing of this suit on January 13, 1969. Plaintiff paid the 1968 taxes to defendants, with penalty and interest accrued thereon, after the 1968 taxes became delinquent and paid same with a check marked "under protest" without further explanation. Plaintiff, Dan Blaha, testified that his own property was "worth" uniformly $130.00 per acre. His neighbor likewise testified that $130.00 per acre would be a fair figure for market value of the Blaha property, and plaintiff offered no further testimony of the market value of his property or similar properties in the school district. Blaha testified that if his figure of $130.00 per acre were used for market value of his land, and applying the thirty (30%)

per cent of market value assessment being made on all properties in the district, the total taxable value of plaintiff's property would have come to $8,869.38, as opposed to the actual total assessed value placed thereon by the tax collector, which came to $15,600.00. Applying the uniform $1.50 per $100.00 evaluation assessment to this figure, a tax of $133.00 results, which would have been paid by plaintiff without protest had his property been valued as he testified. The actual tax levied was $234.00, or $101.00 over what it would have been had plaintiff's figures been adopted. Plaintiff testified that such a difference worked a substantial injury to him. The $101.00 figure is approximately 76% more than plaintiff would have had to pay if the property had been valued at what he and his neighbor testified was a fair market value.

The trial court further found that defendant, D. F. McHenry, personally inspected Blaha's property and rendered the market value at $200.00 per acre for all of Blaha's tracts of land, with exception of plaintiff's improved seven-acre homestead tract, which was valued by McHenry at approximately $600.00 per acre. Defendant McHenry testified that the total assessive value of plaintiff's property came to $15,600.00 and that this figure represented 30% of the market value of the Blaha property, which is uniform for all other property subject to taxation in the Caldwell Independent School District. McHenry also testified that the total value of all property on the tax rolls for the year 1968 was approximately $52,000,000.00, and that 30% of the total value of all property on the tax rolls was approximately $15,500,000.00.

Plaintiff offered no evidence of fraud or bad faith on behalf of the defendants. The defendants did not, however, tax bank deposits, household goods, or stocks and bonds in 1968. The total bank deposits in the Caldwell National Bank in 1968 came to $4,361,998.42 and the total bank deposits for the First State Bank of Caldwell came to $4,115,669.63. Approximately 70% of said amounts represents deposits by individuals and other organizations residing or domiciled in the district. There is no evidence in the findings or the record showing the unrendered amount of cash owned or deposited by plaintiff, the value of his other personalty, or the general legal exemptions of deposits, stocks and bonds owned by those organizations exempt from taxation or other personalty not taxable.

■ The record is not clear on all points, but we believe that the plaintiff is not entitled to injunctive or temporary injunctive relief since his suit was filed after the defendants' tax plan had been put into effect, and over 75% of the taxes had been paid and collected at the time of filing of this suit. McPhaul v. City of Lubbock, 401 S.W.2d 705, (Tex.Civ.App.), writ ref., n. r. e.; Bryson v. Bertram Independent School District, 443 S.W.2d 77, (Tex.Civ.App.), writ ref., n. r. e.; Jackson v. Maypearl Independent School District, 392 S.W.2d 892, (Tex.Civ.App.), no writ; Ellis v. Pollard, 405 S.W.2d 205, (Tex.Civ.App.), no writ. While injunctive relief is generally improper after the tax plan has been put into effect, in order to prevail the plaintiff must show *substantial* injury to himself. See State v. Federal Land Bank of Houston, 160 Tex. 282, 329 S.W.2d 847, 850, (Tex.Sup.).

■ In its conclusions of law, the trial court held that the plaintiff failed to prove substantial injury and failed to prove fraud or bad faith on the part of the Board of Equalization of defendants or the Tax Assessor-Collector. However, the trial court further held that the tax plan of defendants, in arriving at valuations, was "illegal because of failure to consider 'market value' and because of the arbitrary setting of values by classifications of acreage." We must, therefore, regard this case as one where the true and legal basis

of arriving at assessed valuations originally was fundamentally erroneous as a plan or scheme of taxation. However, if the taxpayer's taxes or valuations are not substantially excessive, even though the taxation plan be fundamentally erroneous, the taxpayer is not entitled to relief. State v. Whittenburg, 153 Tex. 205, 265 S.W.2d 569, 573, (Tex.Sup.); City of Arlington v. Cannon, 153 Tex. 566, 271 S.W.2d 414, 417, (Tex.Sup.); Whelan v. State, 155 Tex. 14, 282 S.W.2d 378, 380, (Tex.Sup.); Milligan v. Corsicana Independent School District, 381 S.W.2d 97, 99, (Tex.Civ.App.), writ ref., n. r. e.; State v. Federal Land Bank of Houston, 160 Tex. 282, 329 S.W. 2d 847, 850, (Tex.Sup.). While cash, money in banks and stocks and bonds are taxable, the burdens resting upon tax authorities properly and correctly to assess such properties, their flexibility considered, is almost impossible from a practical standpoint. See Art. 342–709, V.A.T.S. Some practical considerations must be given to such a problem, though an attempt must be made to include such items in the tax structure. There is nothing in the record to show that such attempt was not made.

There being no statement of facts in this case, and the trial court having rendered judgment in favor of defendants, any view of the law which the trial court could have applied under the pleadings and the evidence are resolved in support of the judgment. See 4 Tex.Jur.2d, Sec. 806, p. 333 and cases cited; Brown v. Frontier Theatres, Inc., 369 S.W.2d 299, 301–302, (Tex.Sup.). And omitted, unrequested and related elements concerning the facts will be supplied by presumption in support of the judgment under ordinary circumstances. Rule 299, T.R.C.P. As we stated above, the trial court made no real findings of fact as to the truth or credibility of the testimony of plaintiff or his neighbor regarding values and assessed values. On the other hand, the defendant, McHenry, testified at the trial that on personal inspection the market value of plaintiff's property was $200.00 per acre with the exception of seven acres constituting the homestead tract, which he valued at $600.-00 per acre, making the total assessed value of plaintiff's real property the sum of $15,600.00. The trial court held that the plaintiff failed to prove fraud or bad faith on the part of defendants, and we may deem by such findings above that the omission of certain items of personalty from the tax rolls was not deliberate and intentional but rather was impracticable or impossible, even though the record does not specifically show whether a bona fide effort was actually made to include all taxable items. See Kelly v. A. & M. Consolidated Independent Sch. Dist., 398 S.W. 2d 438, (Tex.Civ.App.), writ ref., n. r. e. We may further deem that the party-witness, McHenry, was qualified to express his opinion as to the reasonable market value of plaintiff's property, and that the trial court based its judgment partly and properly upon McHenry's testimony. See Rule 299, supra. For all of the above reasons, the findings and data included in the record do not show any substantial injury to plaintiff under the rule of Whelan v. State, supra, 282 S.W.2d p. 383, in regard to bank deposits and similar matters.

Discusion of other points is considered to be unnecessary.

There being no statement of facts, and it being our view that the findings and conclusions of the trial court are sufficient to support its judgment, the judgment of the trial court is affirmed.

TUNKS, C. J., not participating.