**Orvis NEVILLE et al., Appellants,**

**v.**

**CASS COUNTY, Texas, et al., Appellees.**

**No. 8256.**

Court of Civil Appeals of Texas, Texarkana.

April 8, 1975.

Rehearing Denied May 20, 1975.

J. R. Cornelius, Cornelius & Shivers, Jefferson, J. R. Cornelius, Jr., Zelenskey, Cor-

nelius, Rogers, Berry & Hallmark, Lufkin, for appellants.

John D. Raffaelli, Raffaelli & Hawkins, Texarkana, for appellees.

CHADICK, Chief Justice.

This is an appeal from a judgment of the District Court of Cass County denying Orvis Neville and a group of co-plaintiff landowners a temporary injunction pending judgment in a mandamus suit to compel the abandonment of Cass County's current method of land assessment for ad valorem taxation. The judgment of the trial court is affirmed.

A judgment entered September 6, 1973, in the Fifth Judicial District Court of Cass County, Texas, in Case No. 21,356, styled Shell Oil Company v. Cass County, et al determined that inequities and unfairness existed in the prevailing Cass County tax structure and ordered the county to "adopt a system of taxation in full compliance with the Constitution and the statutes of the State of Texas whereby all taxable property known to the Tax Assessor, or of which the Tax Assessor may have some notice by diligent investigation, be revalued and placed upon the tax rolls of said county in accordance with the laws of the State of Texas, and that the said Cass County shall make a corrected plan of taxation effective for the tax year 1974." As the initial step in compliance, the County Tax Assessor-Collector unilaterally increased the value of nearly all rural land in the county from six dollars ($6.00) per acre, at which it had been assessed for fifteen years, to fifteen dollars ($15.00) per acre for taxation purposes. The assessing officer valued and assessed lands he privately owned at twenty dollars ($20.00) per acre, and assessed land voluntarily valued at more than fifteen dollars ($15.00) per acre by owners at the owner's figure.

■ Counsel for Cass County admits by statement in the County's brief that the unilateral action of "the Tax Assessor in assessing practically all of the rural property at fifteen and no/100 ($15.00) per acre is arbitrary and illegal." Counsel does not concede, however, that such illegal assessment entitled the appellants to the temporary injunction they prayed for as plaintiffs below. The legal proposition is urged defensively that in order for a landowner to be entitled to such relief, the owner must prove that he, individually, is substantially harmed by the assessment. The necessity of such showing of harm in a collateral attack on the assessment, that is, suit after the tax rolls have been certified, is well established by City of Arlington v. Cannon, 153 Tex. 566, 271 S.W.2d 414 (1954); State v. Whittenburg, 153 Tex. 205, 265 S.W.2d 569 (1954); Whelan v. State, 155 Tex. 14, 282 S.W.2d 378 (1955). The same demonstration of harm is required when a suit constitutes a direct attack, that is, when suit is instituted before the tax rolls have been certified, as in this instance. Montgomery County et al. v. Humble Oil & Refining Company, 245 S.W.2d 326 (Tex.Civ.App. Beaumont 1951, writ ref'd n. r. e.); Lancaster Independent School District et al. v. Pinson et al., 510 S.W.2d 380 (Tex.Civ.App. Dallas 1974, writ ref'd n. r. e.); Sierra Blanca Independent School District et al. v. Sierra Blanca Corporation et al., 514 S.W.2d 782 (Tex.Civ.App. El Paso 1974, writ ref'd n. r. e.); and Duffey et al. v. Union Hill Independent School District, 490 S.W.2d 201 (Tex.Civ.App. Texarkana 1973, writ ref'd n. r. e.).

■ No evidence was introduced to show the actual market value of land owned by any one of the co-plaintiffs. In the absence of such evidence there is no factual basis for a calculation that would show an individual landowner's property is assessed at a greater percentage of its value than the percentage assessed for other property subject to taxation. In other words, the record does not show the inequality of assessment that substantially harms or discriminates against the individ-

ual taxpayers. The cases last cited are relevant.

Regardless of the failure of proof just pointed out it is contended by the appellants that the record establishes substantial harm under factual circumstances and a theory suggested in Federal Land Bank of Houston v. State, 314 S.W.2d 621 (Tex.Civ.App. Amarillo 1958) rev'd on other grounds, 160 Tex. 282, 329 S.W.2d 847 (1959). The theory as there stated is that failure to tax large quantities of taxable property may be considered on the question of discrimination and substantial injury. It is reasoned in the opinion that, if the budgetary needs of the taxing unit were satisfied by the tax rate adopted and levied on the assessed valuations, the addition of large untaxed quantities of taxable property would necessarily result in a substantial reduction of the taxes of a property owner whose property was assessed and taxed. In connection with this theory it is argued that the trial court's finding of fact No. 5 is against the overwhelming weight and preponderance of the evidence.

The trial court's finding of fact No. 5 is: "The Court finds that the failure to include those items of properties on the tax rolls (referring to bank deposits, jewelry, stock shares, etc., mentioned in finding No. 4) * was because the same were not rendered by those persons owning the same and because they had not come to the attention of the Tax Assessor or of the Board of Equalization, and that the failure to include such properties on the tax rolls was not intentional or as a result of a deliberate scheme or device to permit certain classes of property to escape their fair share of taxation." No evidence was introduced showing that money on deposit in Cass County Bank and other financial institutions was owned by persons residing in Cass County or that such money was not owned by charitable institutions or other institutions not subject to taxation. The Tax Collector testified that he wrote each of the banks and the savings and loan associations and asked them to furnish him a list of depositors residing within the county and the amount of deposit of each as of December 31, 1973. These institutions either did not reply or refused to divulge the information requested. Neither would any taxpayer requested by the Tax Assessor to render money or stock do so. The Tax Assessor testified that he was not aware of any method whereby he could obtain information concerning deposits in the bank for the purpose of placing such property on the tax roll. He also avowed that he had not deliberately omitted any taxable property from the rolls and that no property of which he had knowledge or of which he could obtain knowledge was omitted from the rolls. No proof was produced that the Tax Assessor or the county and its officials employed a scheme or device of any nature to permit certain classes of property to escape a fair share of taxation. The record provides no basis for this court to condemn the trial court's finding No. 5 as being against the great weight and preponderance of the evidence.

Having concluded that finding of fact No. 5 should be sustained it follows that there is no factual basis for the application of the *Federal Land Bank* doctrine. The validity of that doctrine is not reached. All of the appellants' points of error have been carefully examined and are overruled. The overall conclusion is that appellants have not shown themselves to be entitled, as a matter of law, to the injunctive relief prayed. The judgment of the trial court is affirmed. And as an injunction pendente lite was heretofore granted by this court, such order is rescinded and the injunction dissolved.

CORNELIUS, J., not participating.

* Interpolated for clarity.