**JOHNSON CITY INDEPENDENT SCHOOL DISTRICT et al., Appellants,**

v.

**Vernon CRIDER et al., Appellees.**

**No. 12,396.**

Court of Civil Appeals of Texas, Austin.

March 17, 1976.

Rehearing Denied April 28, 1976.

J. C. Hinsley, Austin, for appellants.

Donald S. Thomas, Mary Joe Carroll, Clark, Thomas, Winters & Shapiro, Austin, for appellees.

PHILLIPS, Chief Justice.

This suit was instituted by appellees,[1] against the Trustees, Board of Equalization, and Tax Assessor-Collector of the Johnson City Independent School District, the appellants here, to enjoin appellants from making any attempt to collect school district taxes. Subsequently, a hearing was held on appellees' request for a temporary injunction, evidence was presented, and the trial court granted a temporary injunction against the appellants enjoining them from

1. Appellees are: Vernon Crider, Roy Rosa, Juanita Hobbs, R. B. Felps, Glenn Smith, Clark Withers, and A. W. Moursund.

making any attempt to require payment of taxes, but authorizing the school district to send out tax notices and receive amounts voluntarily paid. It is from this judgment that appellants have perfected their appeal to this Court. We reverse the judgment of the trial court and herewith render judgment dissolving the temporary injunction.

Appellants are before us on a number of points of error, their leading contention being that these appellees have made no showing of any substantial injury to them by the method in which the tax plan was being administered or applied. We sustain this point.

In granting the appellees the temporary injunction the trial court found that the plan of taxation which the appellants proposed to put into effect is unconstitutional, arbitrary, capricious and unlawful in the following respects: (1) it disregards the requirement in Article VIII, Section 1 of the Texas Constitution that taxation be "equal and uniform," (2) it deliberately and illegally omits property and categories of property lawfully subject to taxation and, thus, unlawfully attempts to place the burden of taxation on an arbitrarily limited portion of the residents of the school district, (3) it illegally disregards market values of the properties attempted to be assessed for taxation, (4) it is based upon an assumption, shown to be contrary to fact, that all ranch lands in the district were uniformly utilized in the production of livestock and results in the assessment of personal property solely upon the basis of the number of acres of real property owned, (5) it disregards controlling statutory procedures for the assessment and collection of *ad valorem* taxes, (6) it was designed in such an arbitrary and capricious manner that it was impossible for the Board of Equalization to function properly, (7) it results in grossly excessive valuations of certain properties within the district.

Although the broad findings made by the court could well support its order if based on sufficient evidence, we can find no evidence in this record to sustain the injunction and insufficient evidence on which to sustain the judgment with respect to the illegality of the taxing plan or the method of its enforcement.

The members of the Board of Equalization were called as witnesses, and, after testifying as to their qualifications, and as to the procedures they employed in performing their duties, the minutes of the Board were identified and introduced into evidence. None of these witnesses were questioned by appellees.

The first witness called by appellees testified as to his experiences with the Board of Equalization but did not testify as to what final valuations for tax purposes were placed upon his properties, nor did he compare such valuations with the values placed upon the property of any other taxpayer. No conclusions could be drawn from his testimony that properties belonging to him had not been assessed on a basis that was equal and uniform with other property owners.

The second witness for appellees testified that she had not rendered her property for taxation. She did not testify as to what value was finally assigned her property or what final value was ever fixed on the value of any other property owner in the school district for tax purposes. Thus it becomes impossible to determine whether there had been any failure to tax her on an equal and uniform basis with other property owners in the district.

The tax assessor-collector was then called as a witness, however, he gave no testimony as to the value at which any property had been assessed for taxation.

■ Appellees insist that the temporary injunction must be upheld to preserve the *status quo* and that, under the evidence submitted, appellees have shown probable right and probable injury citing *Transport Company of Texas v. Robertson Transports,* 152 Tex. 551, 261 S.W.2d 549 (1953), among others.[2] We have no quarrel with the law

2. *General Telephone Company v. City of Wellington,* 156 Tex. 238, 294 S.W.2d 385 (1956); *Dallas General Drivers, et al. v. Wamix, Inc., of Dallas,* 156 Tex. 408, 295 S.W.2d 873 (1956);

announced in these cases, however, where a taxpayer seeks to enjoin the collection of a tax because of some illegal feature of the tax plan or the manner in which the plan is applied, he must show how the alleged illegality damages *him.* He must not only show precisely how he has been damaged but that the damage to him is substantial. Whether tax cases, such as the case at bar, require a stricter proof of probable harm where injunctive relief is sought or whether a different rule applies may be a matter of conjecture, but the rule itself has been consistently applied by the courts of this State as the cases cited later in this opinion will disclose.

As evidence to uphold the court's judgment, appellees call our attention to the fact that the appointed tax assessor-collector had no previous experience either with tax authorities or with property values; that he secured tax rolls, but not renditions, from Blanco County; appraised ranch land on the basis of his personal estimate of "production value"; on commercial property on "my opinion"; that he testified that some persons rendered money as personal property but that so few of them did "we didn't attempt to pick up the money"; and that there was no evidence that mineral interests were taxed. Appellees point to evidence of what they contend, was an inequitable assessment of a certain Buta Industries taxpayer. This taxpayer was not a party to the suit nor has he complained of the assessment made of his properties. Appellees also cite evidence which they contend discloses that cattle in the area were taxed on an arbitrary formula invoked by the assessor-collector with no relationship to the actual market value of the cattle.

Appellees' contentions are best answered by the court in *Lubbock Hotel Co. v. Lubbock Independent School District*, 85 S.W.2d 776, 778 (Tex.Civ.App.1935, no writ): "Many of defendants' propositions assert merely that plaintiff adopted an arbitrary and fundamentally wrong system of fixing

the values of real estate. It is not alleged in such propositions, nor attempted to be shown in supporting statements, that the effect or operation of such system resulted in any injury to appellants, nor in any discrimination against them. A mere theory may not be litigated. For aught that appears in and under many of defendants' propositions, the actual working of the allegedly wrong system may have actually resulted in equality and uniformity of taxation. There must be more than the mere adoption of a fundamentally wrong principle or method of taxation. The courts grant relief upon 'the adoption of a fundamentally wrong principle or method, *the application of which substantially injures the complainant.*' (Italics ours.) *Rowland v. City of Tyler* (Tex.Com.App.) 5 S.W.2d 756, 760."

■ The only specific assessment complained of as excessive in the case at bar is in connection with the property of one of the owners of Buta Industries who is not a party to this suit. Even so, there is no showing in what manner this assessment, granting for purposes of argument that it was excessive, injures these appellees. See *Duffey v. Union Hill Independent School District*, 490 S.W.2d 201 (Tex.Civ.App.1973, writ ref'd n. r. e.); *Bynum v. Alto Independent School District of Alto, Cherokee County*, 521 S.W.2d 656 (Tex.Civ.App.1975, writ ref'd n. r. e.).

■■ It has been held that exact uniformity and equality of taxation is an unattainable ideal. *Briscoe Ranches, Inc. v. Eagle Pass Independent School District*, 439 S.W.2d 118 (Tex.Civ.App.1969, writ ref'd n. r. e.). This is, undoubtedly, one of the principal reasons for the requirement that a complaining taxpayer must prove substantial damage to himself in spite of proof of a questionable taxing scheme or its enforcement. *Lancaster Independent School District v. Pinson*, 510 S.W.2d 380 (Tex.Civ. App.1974, writ ref'd n. r. e.).

*Janus Films, Inc. v. City of Fort Worth,* 163 Tex. 616, 358 S.W.2d 589 (1962); *Oil Field Haulers Association v. Railroad Commission,*

381 S.W.2d 183 (Tex.1964); and *State v. Cook United, Inc.,* 469 S.W.2d 709 (Tex.1971).

We cannot agree with appellees' contention that the extent to which taxpayers are entitled to relief in a suit to enjoin the payment of taxes is dependent primarily upon whether the attack made upon the levy is direct or collateral, the determinative question being whether or not the plan has been "put into effect." Appellant insists that the phrase "put into effect" has consistently been construed as meaning the final correction of the tax rolls and the beginning of the collection process, citing *Milligan v. Corsicana Independent School District*, 381 S.W.2d 97 (Tex.Civ.App.1964, writ ref'd n. r. e.). Appellees then contend that since their attack upon the levy was before it had been put into effect, the attack was direct and that under the facts before us a temporary injunction will lie. We agree with appellees that injunctive relief may lie in certain cases where the tax plan has not yet been put into effect. *City of Arlington v. Cannon*, 153 Tex. 566, 271 S.W.2d 414 (1954). However, for parties in a situation such as theirs to prevail, the law also requires proof of substantial injury. See *Duffey, Bynum* and *Lancaster*, cited above, where injunctive relief sought to prevent the collection of the taxes was denied for a failure to show substantial damage on the part of those taxpayers seeking the injunctions. Also see *Seguin Independent School District v. Blumberg*, 402 S.W.2d 552 (Tex.Civ.App.1966, writ ref'd n. r. e.); *Whelan v. State*, 155 Tex. 14, 282 S.W.2d 378 (1955); *City of Arlington v. Cannon, supra; Montgomery County v. Humble Oil and Refining Co.*, 245 S.W.2d 326 (Tex.Civ.App.1951, writ ref'd n. r. e.).

We note that the court also found that the taxing procedure disregards controlling statutory requirements for the assessment and collection of *ad valorem* taxes, and held further that the rule announced by this Court in *Nelson v. Blanco Independent School District*, 386 S.W.2d 636 (Tex.Civ.App.1965, no writ), justified the granting of the temporary injunction. *Nelson v. Blanco Independent School District* involved an illegal tax assessment. From a review of the record before us we find that there is insufficient evidence of any illegality of the assessment, or of any of the other statutory requirements alluded to in the judgment. Consequently, at this stage of the proceeding, we will address ourselves solely to the question of injunctive relief, reverse the judgment of the trial court and dissolve the temporary injunction.

Reversed and Temporary Injunction Dissolved.