ATTORNEY GENERAL OF TEXAS

GREG ABBOTT

September 7, 2011

The Honorable William A. Callegari
Chair, Committee on Government Efficiency
and Reform
Texas House of Representatives
Post Office Box 2910
Austin, Texas 78768-2910

Opinion No. GA-0883

Re: Treatment of existing debt after consolidation
of municipal utility districts pursuant to section
54.728 of the Water Code (RQ-0961-GA)

Dear Representative Callegari:

You ask four questions related to the consolidation of municipal utility districts ("MUDs") and the debt service tax rates that the consolidated district may charge.[1] You tell us that Harris County Municipal Districts 364 and 365 "have discussed the possibility of merging into a single, consolidated district." Request Letter at 1. You further explain that one of the districts is hesitant to do so because the other district's "debt service obligations extend several years beyond" its own. *Id.* at 2. You therefore ask about the authority of a consolidated district to levy different debt service tax rates on the property within the former boundaries of each district. *Id.* at 3–4.

You first ask whether "Article VIII, Section 1(a) of the Texas Constitution, which requires that taxation shall be equal and uniform, prohibits a Consolidated MUD from levying different debt service tax rates on the property within each of the former municipal utility districts that consolidated to form the Consolidated MUD for the purpose of funding debt service payment on each district's pre-consolidation debt." *Id.* at 3. Subsection 54.731(a) of the Water Code expressly authorizes the action about which you ask:

> After two or more districts are consolidated, the debts of the original
> districts shall be protected and may not be impaired. *These debts may
> be paid by taxes levied on the land in the original districts as if they
> had not consolidated* or from contributions from the consolidated
> district on terms stated in the consolidation agreement.

TEX. WATER CODE ANN. § 54.731(a) (West 2002) (emphasis added); *see also id.* § 54.730 ("After two or more districts are consolidated, they become one district and are governed as one district,

[1]Letter from Honorable William A. Callegari, Chair, House Committee on Government Efficiency and Reform, to Honorable Greg Abbott, Attorney General of Texas at 3–4 (Apr. 15, 2011), https://www.oag.state.tx.us/opin/index_rq.shtml ("Request Letter").

except for the payment of debts created before consolidation . . . ."). Your question therefore requires us to analyze the constitutionality of levying different debt service tax rates on the property within each of the former municipal utility districts. In doing so, we note at the outset that when reviewing a statute's constitutionality, we presume the act is constitutional. *Walker v. Gutierrez*, 111 S.W.3d 56, 66 (Tex. 2003); *see also* TEX. GOV'T CODE ANN. § 311.021(1) (West 2005) (presuming that the Legislature, in enacting a statute, intended to comply with Texas and federal constitutions)..

As your request letter indicates, different tax rates within a single utility district could raise constitutional concerns. Request Letter at 3. Article VIII, section 1(a) of the Texas Constitution requires that "[t]axation shall be equal and uniform." TEX. CONST. art. VIII, § 1(a). However, Texas courts have long recognized that absolute equality and uniformity in taxation is an unattainable ideal and not required by the constitution. *Briscoe Ranches, Inc. v. Eagle Pass Indep. Sch. Dist.*, 439 S.W.2d 118, 120 (Tex. Civ. App.—San Antonio 1969, writ ref'd n.r.e.). Instead, Texas courts have consistently held that

> [t]axes are said, within the meaning of the constitution, to be "equal and uniform," when no person nor class of persons in the taxing district, whether a state, county, or other municipal corporation, is taxed at a different rate than are other persons in the same district upon the same value or the same thing, and where the objects of taxation are the same by whomsoever owned, or whatever they be.

*Norris v. City of Waco*, 57 Tex. 635, 641, 1882 WL 9558, at *5 (Tex. 1882); *Weatherly Indep. Sch. Dist. v. Hughes*, 41 S.W.2d 445, 447 (Tex. Civ. App.—Amarillo 1931, no writ). The constitutional mandate of equal and uniform taxation requires only that all persons falling within the same class must be taxed alike. *Hurt v. Cooper*, 110 S.W.2d 896, 900–01 (Tex. 1937). Thus, article VIII, section 1(a) is satisfied when a tax classification is not unreasonable, arbitrary, or capricious and when it operates equally on persons or property within the class. *Tarrant Appraisal Dist. v. Colonial Country Club*, 767 S.W.2d 230, 234 (Tex. App.—Fort Worth 1989, writ denied); *see also Enron Corp. v. Spring Indep. Sch. Dist.*, 922 S.W.2d 931, 936 (Tex. 1996) (explaining that the Legislature may constitutionally draw distinctions in the manner in which market value of property is determined for ad valorem tax purposes).

In your request letter, you do not provide us with details about the proposed tax rates for the original districts or how those rates would be set, so we cannot determine whether your particular consolidation plan comports with article VIII, section 1(a) of the Texas Constitution. However, as a general matter, so long as the different rates charged to the classifications are not unreasonable, arbitrary, or capricious and individuals within those classifications are treated equally, a court would likely conclude that tax classifications based on land ownership in the original districts of a consolidated MUD do not violate article VIII, section 1(a) of the Texas Constitution. *See* Tex. Att'y Gen. Op. No. GA-0653 (2008) at 5 (concluding that it would not violate article VIII, section 1(a) for a regional transportation authority to collect a sales and use tax at different rates in different subregions of the authority, all other constitutional requirements being met).

Assuming an affirmative answer to your first question, your second question is whether a consolidated MUD may levy a third different debt service tax rate on property the consolidated MUD annexes that was never part of either original district. Further, you ask how the debt service tax rate should be set for the newly annexed property. Request Letter at 3–4. Chapter 49 of the Water Code governs the annexation of land in general law districts, including the municipal utility districts that you ask about.[2] *See* TEX. WATER CODE ANN. §§ 49.301–.302 (West 2008). When land is annexed by petition of landowners, a district "shall require the petitioner or petitioners to assume their share of the outstanding bonds, notes, or other obligations" of the district. *Id.* § 49.301(b). The district is authorized "to levy a tax on [the petitioner's annexed] property in each year while any of the bonds, notes, or other obligations payable in whole or in part from taxation are outstanding to pay their share of the indebtedness." *Id.* Section 49.301 thereby permits a MUD to levy a different debt service tax rate on property annexed that was not part of the original district based on the annexed property's proportionate share of debt. *Id.* As with the different rates charged to the original districts, the different rates charged to annexed property must not be unreasonable, arbitrary, or capricious and individuals within those classifications must be treated equally. It is up to the MUD, in the first instance, to comply with the statutory directives to determine the debt service rate to levy on annexed property.

Your third question is whether a consolidated MUD can "legally levy a district-wide debt service tax rate for the purpose of funding debt service obligations on debt issued by the Consolidated MUD after consolidation." Request Letter at 4. Any ad valorem tax obligations issued by a consolidated MUD are subject to voter approval. *See* TEX. WATER CODE ANN. §§ 54.505 (West Supp. 2010), 54.733 (West 2002), 49.301(b) (West 2008). Once affected voters have given the requisite approval, section 54.601 of the Water Code authorizes a district to, "[a]t the time bonds payable in whole or in part from taxes are issued, . . . levy a continuing direct annual ad valorem tax . . . on all taxable property within the district." TEX. WATER CODE ANN. § 54.601 (West 2002). Thus, the Legislature has authorized the consolidated MUD to levy a tax on all property within the district to fund debt service obligations on debt issued after the district is consolidated. This debt service tax can be imposed in addition to any taxes levied under Water Code section 54.731 on the land in the original districts for the payment of debts created before consolidation. *See id.* § 54.731.

In your final question, you ask whether the original districts' bond covenants, which required the preexisting MUDs to levy a debt service tax upon all taxable property within the district, also require the consolidated MUD "to levy a single debt service tax rate on all taxable property within its boundaries." Request Letter at 4. Definitively answering your question will require analyzing the specific language of the bond covenants because the answer would depend upon the specific

---

[2] You explain in your request letter that Harris County Municipal Districts Nos. 364 and 365 were each created by orders of the Texas Natural Resource Conservation Commission, now known as the Texas Commission on Environmental Quality ("TCEQ"), pursuant to article XVI, section 59 of the Texas Constitution. Request Letter at 1. Municipal utility districts created by TCEQ are general law districts, subject to chapter 49 of the Water Code. *See* TEX. WATER CODE ANN. § 49.001(a)(1) (West 2008); *Save Our Springs Alliance, Inc. v. Lazy Nine Mun. Util. Dist.*, 198 S.W.3d 300, 308 (Tex. App.—Texarkana 2006, pet. denied) (explaining that municipal utility districts created by TCEQ are general law districts).

promises the original MUDs made to the bondholders.  Because reviewing or construing specific contracts is outside the scope of an attorney general opinion, we cannot answer your final question. *See* Tex. Att'y Gen. Op. No. GA-0828 (2010) at 3 n.3 (explaining that this office does not review or construe specific contracts).

## S U M M A R Y

A court could conclude that tax classifications based on land ownership in the original districts of a consolidated municipal utility district would not violate article VIII, section 1(a) of the Texas Constitution. In doing so, the court would have to first find that the divergent tax rates are not unreasonable, arbitrary, or capricious and additionally find that individuals within those classifications are treated equally.

A consolidated municipal utility district may levy a different debt service tax rate on annexed property that was not part of the original district.

Under Water Code section 54.601, the Legislature has authorized a consolidated municipal utility district to levy one tax rate on all property within the district to fund debt service obligations on debt issued after district consolidation.

Very truly yours,

GREG ABBOTT
Attorney General of Texas

DANIEL T. HODGE
First Assistant Attorney General

DAVID J. SCHENCK
Deputy Attorney General for Legal Counsel

JASON BOATRIGHT
Chair, Opinion Committee

Virginia K. Hoelscher
Assistant Attorney General, Opinion Committee